**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REGINA BROOKSHIER and LINDA SAYERS, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>   v.<br><br>WW INTERNATIONAL, INC.,<br><br>                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Regina Brookshier and Linda Sayers ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant WW International, Inc. ("Weight Watchers" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

**<u>NATURE OF THE ACTION</u>**

1. This is a class action suit brought against Weight Watchers for aiding, agreeing with, employing, procuring, or otherwise enabling the wiretapping of the electronic communications of visitors to its website, weightwatchers.com (the "Website").

2. Specifically, Defendant aids, agrees with, procures, or otherwise enables at least two third-party service providers to collect information from visitors to its Website: TikTok Ltd. ("TikTok") and  Alphabet, Inc. ("Google") (collectively, the "Third Parties").

3. In particular, these Third Parties—as enabled by Defendant—eavesdrop on the information provided by Website visitors in the form fields of the "Wondering if Weight Watchers is For You?" quiz (the "Quiz"), including users' weight, age, height, certain medical conditions, and food preferences, all without the prior consent of visitors to the Website. These Third Parties

1

conduct the wiretapping through two pieces of software-as-a-service ("SaaS"): the TikTok Pixel, provided by TikTok, and the Google Analytics Pixel, provided by Google (the "Pixels").

4.    The electronic communications made in response to the Quiz questions are routed through the servers of and are used by the Third Parties to, among other things, assist Defendant with its marketing, advertising, and data analytics efforts.

5.    The nature of the Third Parties' licensing agreements with Defendant are such that Defendant "aids, agrees with, employs, or conspires" to permit the Third Parties to read, attempt to read, to learn, and/or to use the confidential communications of Website visitors without prior consent, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a) and 632.  Similarly, the nature of the Third Parties' licensing agreements with Defendant are such that Defendant "procure[d] [the Third Parties] to intercept or endeavor to intercept" electronic communications in violation of Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA"), 18 Pa. Con. Stat. §§ 5701, *et seq*.

6.    Plaintiff Regina Brookshier brings this action on behalf of all California residents who answered questions from the "Wondering if Weight Watchers is For You?" Quiz on the Website while in California, and whose electronic communications were intercepted or recorded by the Third Parties.

7.    Plaintiff Linda Sayers also brings this action on behalf of all Pennsylvania residents who answered questions from the "Wondering if Weight Watchers is For You?" Quiz on the Website while in Pennsylvania, and whose electronic communications were intercepted or recorded by the Third Parties.

## PARTIES

8.      Plaintiff Regina Brookshier is a California resident who resides in San Bernadino, CA and intends to remain in California.  Plaintiff Brookshier was in California when she visited the Website and submitted answers to the Quiz.

9.      Plaintiff Linda Sayers is a Pennsylvania resident who resides in Slatington, PA and intends to remain in Pennsylvania.  Plaintiff Sayers was in Pennsylvania when she visited the Website and submitted answers to the Quiz.

10.      Defendant WW International, Inc. is a Virginia Corporation whose principal place of business is 675 Avenue of the Americas, 6th Floor New York, NY 10010.  WW International, Inc. owns and operates the Website.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000, exclusive of interest and costs, and at least one member of the proposed class is a citizen of a state different from at least one Defendant.

12.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in New York.

13.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this District.

## FACTUAL ALLEGATIONS

I.      **OVERVIEW OF THE PIXELS**

    A.      **The TikTok Pixel**

14.      TikTok offers a SaaS called "TikTok Pixel," which "helps businesses track the performance of their ads" by sending information from the business's website to TikTok, who then

uses that information to optimize ad campaigns on TikTok and across the internet.[1]

15.     The TikTok pixel can be "plugged in" to any website, as the pixel is a piece of code that can be added to any website to capture "events" (any activity by a user that happens on a website).

16.     The TikTok Pixel is part of a package of prebuilt software tools under the "TikTok for Business" product line that allow the delivery of personalized ads.  By employing TikTok to collect user information through the TikTok Pixel, websites that procure TikTok's services can use the information to deliver more effective targeted advertisements, increasing revenue for the websites.

17.     In short, when users interact with a webpage with the TikTok Pixel installed, the TikTok Pixel collects the "Metadata and button clicks" (information about what the user clicked on—such as the specific URL address visited by the user— or text entered into the webpage), a timestamp for the event, and the visitor's IP address.[2] That information is sent automatically to TikTok.

18.     The "TikTok for Business" business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites with the TikTok Pixel.

19.     Thus, through websites that employ TikTok's services, TikTok directly receives the electronic communications of website visitors entered into search bars, chat boxes, and online quizzes in real time.

---

[1] "TikTok Pixel 101: What It Is & How to Use It," https://popupsmart.com/blog/tiktok-pixel (Last accessed December 27, 2023).

[2] "About TikTok Pixel," https://ads.tiktok.com/help/article/tiktok-pixel?redirected=2 (Last accessed December 27, 2023).

20.     On each Quiz page and checkout page on Defendant's Website (where the TikTok Pixel is installed), TikTok collects the URL value of the page visited (which contains the relevant part of the Quiz question), an identification code TikTok uses to track the user, and the visitor's browser type and operating system.

21.     When the TikTok Pixel is used on a website, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, the TikTok Pixel involves TikTok, a separate and distinct third-party entity from the parties in the conversation, using the TikTok Pixel to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party.  This is so because TikTok itself is collecting the content of any conversation.  That information is then analyzed by TikTok before being provided to any entity that was a party to the conversation (like Defendant).

22.     Once TikTok intercepts website communications, it has the capability to use such information for its own purposes.  TikTok's Commercial Terms of Service grant TikTok "a non-exclusive, royalty-free, worldwide, transferable, sublicensable license to access, use, host, cache, store, display, publish, distribute, modify and adapt [information collected from partner websites] in order to develop, research, provide, promote, and improve TikTok's products and services."[3]

23.     In practice, this means the information collected is used to (i) analyze trends in consumer behavior based on data collected from websites across the internet that TikTok can then use when providing targeted advertising to other companies, (ii) create consumer profiles of specific users, allowing TikTok to sell future customers targeted advertising to consumers with specific profile characteristics, and (iii) develop new TikTok Business products and services, or improve pre-existing TikTok Business products and services.

---

[3] "TikTok For Business Commercial Terms Of Service" https://ads.tiktok.com/i18n/official/policy/commercial-terms-of-service (Last accessed January 17, 2024).

24.     One of TikTok's partners is Weight Watchers. The TikTok Pixel is employed on the Website in the manner described throughout this Complaint.

**B.     Google Analytics**

25.     Google offers a range of advertising SaaS's, one of which is called "Google Analytics."

26.     "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights" for businesses.[4]  This is made possible by the Google Analytics Pixel, a piece of code installed on a website that collects information on how website users interact with a business's website, such as "how many users bought an item … by tracking whether they made it to the purchase-confirmation page."[5]

27.     Google advertises this service can "[m]onitor activity on your site as it happens."[6]

28.     Google's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites with the Google Analytics Pixel.

29.     Thus, through websites that employ Google's services, Google directly receives the electronic communications of website visitors entered into search bars, chat boxes, and online quizzes in real time.

30.     On each Quiz page and checkout page on Defendant's Website (where the Google Analytics is installed), Google Analytics collects the visitor's individual response to the quiz

---

[4] "How Google Analytics Works" https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=14089939&sjid=2827624563183915220-NC. (Last accessed January 4, 2024).

[5] *Id.*

[6] "The Finer Points" https://marketingplatform.google.com/about/analytics/features/. (Last accessed January 4, 2024).

question, an identifier used to track the visitor's activity across websites, the language spoken on the site, and the visitor's browser, operating system, and Wi-Fi provider.

31.     When the Google Analytics Pixel is used on an entry to a website, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, the Google Analytics Pixel involves Google, a separate and distinct third-party entity from the parties in the conversation, using the Google Analytics Pixel to eavesdrop on, record, extract information from, and analyze a conversation to which it is not a party.  This is so because Google itself is collecting the content of any conversation.  That information is then analyzed by Google before being provided to any entity that was a party to the conversation (like Defendant).

32.     Once Google intercepts the Website communications, it has the capability to use such information for its own purposes. "Google uses the information shared by sites and apps to deliver [] services, maintain and improve them, develop new services, measure the effectiveness of advertising, protect against fraud and abuse, and personalize content and ads you see on Google and on [] partners' sites and apps."[7]

33.     Google's range of SaaS services is based on Google's ability to collect and analyze information about consumers' web behavior and deliver targeted advertising to select consumers based on their web habits.  This involves collecting visitor information from thousands of websites and then analyzing that information in order to deliver targeted advertising and group web users so that they can be targeted for products and categories they are interested in.

34.     Information from websites, like Defendant's Website, is central to Google's ability to successfully market their advertising capabilities to future clients.

---

[7] "Google Privacy and Terms," https://policies.google.com/technologies/partner-sites (Last accessed January 17, 2024).

35.    In sum, Google has the capability to use website communications to (i) improve its own products and services; (ii) develop new Google for Business and Google Analytics products and services; and (iii) analyze website visitors' communications to assist with and data analytics and targeted advertising.

36.    One of Google's partners is Weight Watchers.  The Google Analytics Pixel is employed on the Website in the manner described throughout this Complaint.

## II.    DEFENDANT INSTALLED THE PIXELS ON THE QUIZ

37.    Defendant's "Wondering if Weight Watchers is for You?" Quiz and following checkout screens are the part of Website at issue in this action.

38.    The Quiz is portrayed to Website visitors as a way to personalize recommendations for Weight Watchers membership plans by asking first-time visitors to the Website about their age, sex assigned at birth, weight, health conditions, weight loss goals, and views on weight loss and weight loss programs.

39.    Since at least January 2023, if not earlier, Defendant employed the services of the Third Parties and their Pixels on each page of the Quiz to track users' responses to the questions and send those responses to the Third Parties so the Third Parties can analyze the information and enable Defendant to target users with ads based on those answers.

40.    By way of example, the images below show the TikTok Pixel installed on each page of the Quiz and following check out screens. The left side of each image shows the webpage that an ordinary visitor to the Website sees.  The right side shows the "network activity," or the bits of code that are installed on the webpage.[8]

---

[8] At the time of Plaintiffs' counsel's investigation in December 2023, both the TikTok Pixel and Google Analytics Pixel were installed on every page of the Quiz and following checkout pages of Defendant's website. See [attestation]

41.    When visitors to the Website scroll down on the home page, they view a pop up with the title "Wondering If Weight Watchers is for you?" and the option to click a button to answer the Quiz questions.



42.    Clicking the "Take our quiz" button directs users to the first Quiz question: "Before we dive in, have you tried WW before?"  As demonstrated below, the Pixels are installed on this webpage and capture information about whether the visitor has tried Weight Watchers in the past.[9]



https://analytics.tiktok.com/api/v2/pixel

---

[9] Plaintiffs have only included screenshots of the TikTok Pixel to avoid redundancy.  However, the following allegations are equally applicable to the Google Analytics Pixel.

43.     On the next page of the Quiz, Defendant asks the visitors' age.  As demonstrated below, the Pixels are installed on this webpage and capture the age range submitted by the visitor.



44.     On the next page of the Quiz, Defendant asks the visitors' sex assigned at birth.  As demonstrated below, the Pixels are installed on this webpage and capture the visitors' sex assigned at birth.



45.     On the next page of the Quiz, Defendant asks the visitors' height. As demonstrated below, the Pixels are installed on this webpage and capture the height (in feet and inches) submitted by the visitor.



46.     On the next page of the Quiz, Defendant asks the visitors' current weight. As demonstrated below, the Pixels are installed on this webpage and capture the number in pounds submitted by the visitor.



47.     On the next page of the Quiz, Defendant asks the visitors' goal weight. As demonstrated below, the Pixels are installed on this webpage and capture the number in pounds submitted by the visitor.



48.     On the next page of the Quiz, Defendant asks the visitors' goals for losing weight. As demonstrated below, the Pixels are installed on this webpage and capture the selection (or selections) submitted by the visitor.



49.     On the next page of the Quiz, Defendant asks about what has prevented them from achieving their weight loss goals in the past.  As demonstrated below, the Pixels are installed on this webpage and capture the selection (or selections) submitted by the visitor.



50.     On the next page of the Quiz, Defendant asks if visitors have diabetes.   As demonstrated below, the Pixels are installed on this webpage and capture the "yes" or "no" response submitted by the visitor.



51.     On the next page of the Quiz, Defendant asks the visitors to select an option describing their understanding of diet and nutrition.   As demonstrated below, the Pixels are installed on this webpage and capture the selection submitted by the visitor.



52.     On the next page of the Quiz, Defendant asks the visitors' food preferences.   As demonstrated below, the Pixels are installed on this webpage and capture the selection (or selections) submitted by the visitor.



53.     On the next page of the Quiz, Defendant asks if the visitors have dietary restrictions. As demonstrated below, the Pixels are installed on this webpage and capture the selection (or selections) submitted by the visitor.



54.     On the next page of the Quiz, Defendant asks the visitors to select a weight loss approach they believe would be most effective for them.  As demonstrated below, the Pixels are installed on this webpage and capture the selection submitted by the visitor.



55.    On the next page of the Quiz, Defendant asks the visitors to select how they would like to learn about weight loss, health, and nutrition.  As demonstrated below, the Pixels are installed on this webpage and capture the selection submitted by the visitor.



56.    As described above, the presence of the Pixels on each of these pages means that *all* the personal information given in response to the Quiz questions—a user's weight, age, height, medical conditions, and food preferences—are sent to the Third Parties in real time (*i.e.*, as users are inputting their answers to the Quiz questions).

57.    After the Website visitor completes the quiz, they are recommended a Weight Watchers plan and can proceed directly to a series of checkout screens where they provide their email address, personal information, and payment information. These pages also contain the Pixels and the information provided by website visitors is sent to the Third Parties in real time.

58.    The first checkout screen prompts Website visitors to choose a Weight Watchers plan by duration.  As demonstrated below, the Pixels are installed on this webpage and collect the selection submitted by the visitor.







59.    Clicking the "next" button brings the visitor to the second checkout screen, which asks for the visitors' email address.  As demonstrated below, the Pixels are installed on this webpage and collect the submitted email address.



60.     Clicking the "next" button brings the visitor to the third checkout screen, which asks for the visitors' payment information.  As demonstrated below, the Pixels are installed on this webpage and collect the submitted name, payment, and address information.



61.     Clicking the "next" button brings the visitor to the final checkout screen, which asks for the visitors to click a button to agree to several membership and privacy policies and to

click a button to submit the purchase of the membership.  As demonstrated below, the Pixels are

installed on this webpage and collect the selections submitted by the visitor.



62.     At no time prior to the final checkout screen, which comes after almost *twenty*

*pages* of the Quiz and checkout process containing the Pixels, are Website visitors even asked

whether they agree to any type of privacy policy or given any sort of alleged notice that their

information and communications are being sent to any third party.

63.     Because the Third Parties intercepted the communications *prior* to any such notice

or request for consent, any consent given by Plaintiffs and other Class Members is meaningless

and invalid under the relevant statutes, as their privacy has already been invaded.  *See Javier v.

Assurance IQ*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e conclude that the

California Supreme Court would interpret [CIPA] Section 631(a) to require the prior consent of

all parties to a communication."); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117-18

(2006) (CIPA "section 632 … prohibits [] a party … from recording the conversation *without first*

informing all parties to the conversation that the conversation is being recorded") (emphasis

added); 18 Pa. Cons. Stat. § 5704(4) ("It shall not be unlawful … for … [a] person, to intercept a

wire, electronic or oral communication, where all parties to the communication have given *prior consent* to such interception.") (emphasis added).

### III.    PLAINTIFFS' EXPERIENCES

64.    In or about January 2023, Plaintiff Linda Sayers visited Defendant's Website while in Pennsylvania and answered the questions for the Quiz.

65.    In or about February 2023, Plaintiff Regina Brookshier visited Defendant's Website while in California and answered the questions for the Quiz.

66.    During those visits, Plaintiffs entered information into Defendant's "Wondering if Weight Watchers is For You?" Quiz, including all of the various fields and questions pictured above (*e.g.*, weight, height, age, diabetes diagnosis, food preferences).

67.    As Plaintiffs moved through the Quiz (*i.e.*, in real time), the Third Parties—as aided, agreed with, employed, and procured by Defendant—wiretapped Plaintiffs' answers to the Quiz questions (*i.e.*, the contents of Plaintiffs' electronic communications with the Website).

68.    The Third Parties also captured the date and time of the visits, the duration of the visits, Plaintiffs' IP addresses, their location at the time of the visits, their browser types, and the operating system on their devices.

69.    The Third Parties' recording of electronic communications begins the moment a user accesses or interacts with the Quiz on Defendant's Website, prior to a user consenting to any sort of privacy policy or the pixels generally.  Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to TikTok and Google, rather than only to Weight Watchers.

70.    Users, including Plaintiffs, are thus not on notice of any wiretapping when they begin answering questions on Defendant's Website, nor do they provide prior consent to the same.

71.     Linda Sayers was in Pennsylvania when she accessed Defendant's website through an internet browser and entered personal information into Defendant's "Wondering if Weight Watchers is For You?" Quiz.  Upon having the browser access the website in Pennsylvania, the TikTok Pixel and Google Analytics Pixel instructed the browser in Pennsylvania to send the electronic communications directly to the respective Third Partys' servers.

72.     Plaintiff Regina Brookshier was in California when she accessed Defendant's website through an internet browser and entered personal information into Defendant's "Wondering if Weight Watchers is For You?" Quiz.  Upon having the browser access the website in California, the TikTok Pixel and Google Analytics Pixel each instructed the browser in California to send the electronic communications directly to the respective Third Partys' servers.

73.     TikTok and Google had access to Plaintiffs' and Class Members' answers to Quiz questions and other personal information entered on Defendant's Website because each company contracts with Weight Watchers to hide the Pixels in the Website.

## IV. DEFENDANT AIDED, AGREED WITH, EMPLOYED, PROCURED, OR OTHERWISE ENABLED THE THIRD PARTIES' WIRETAPPING OF PLAINTIFFS' ELECTRONIC COMMUNICATIONS FOR ADVERTISING, MARKETING, AND DATA ANALYTICS PURPOSES

### A.     Defendant Discloses User's Information to TikTok For The Purpose Of Marketing, Advertising, And Analytics

74.     As described above, the TikTok Pixel collects information from visitors' interactions with Defendant's Website.

75.     The purpose of this invasion of privacy is straightforward: TikTok collects information from Defendant's website and sends back an analysis of that information, identifying website traffic and ad performance and targeting ads for specific individuals.

76.     This is valuable to Defendant because it improves the effectiveness of Defendant's advertisements, allows for the targeting of users, and provides performance information for ad campaigns.

77.     In addition to helping companies like Defendant make better use of their own customer information, TikTok aggregates that information with the information collected from all sites containing the TikTok Pixel to track users across multiple websites and platforms, which increases the value of TikTok's advertising services when they are offered to other companies.

78.     Thus, the agreement for Defendant to aid in TikTok's wiretapping of Plaintiffs' and Class Members' personal responses to the Quiz questions is done for the purpose of improperly increasing the advertising efficiency and, by extension, profits of both parties.

**B.     Defendant Discloses User's Information To Google For The Purpose Of Marketing, Advertising, And Analytics**

79.     As described above, the Google Analytics Pixel collects information from visitors' interactions with Defendant's Website.

80.     The purpose of this invasion of privacy is straightforward: "[w]hen [Google] collects data, it packages that information up and sends it to Google Analytics to be processed into reports.  When Analytics processes data, it aggregates and organizes the data based on particular criteria,"[10] enabling Google and Defendant to "track what online behavior led to purchases and use that data to make informed decisions about how to reach new and existing customers"[11] through advertisements.  This is valuable to Defendant because it improves the effectiveness of its advertisements.

---

[10] "How Google Analytics Works" https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=14089939&sjid=282762456318915220-NC. (Last accessed January 4, 2024).

[11] "The Value of Digital Analytics" https://support.google.com/analytics/answer/12159453?hl=en&ref_topic=14089939&sjid=13981060670687488151-NC (Last accessed January 4, 2024).

81.     In addition to helping companies, like Defendant, make better use of their own customer information, Google aggregates that information with the information collected from all sites containing the Google Analytics Pixel to track users across multiple websites and platforms, which increases the value of its advertising services when they are offered to other companies.

82.     Thus, the agreement for Defendant to aid in Google's wiretapping of Plaintiffs and Class Members' deeply personal responses to the Quiz questions is done for the purpose of improperly increasing the advertising efficiency and, by extension, profits of both parties.

83.     In sum, TikTok and Google each generate their own revenue by information mining internet activity and using that information for targeted advertising.  They each used the information collected by the Pixels to analyze marketing campaigns, conduct targeted advertising, and ultimately boost their own advertising revenue.

84.     None of the three companies recorded the information for the sole benefit of Defendant; instead, each of them used (or had the capability to use) the information obtained from the Pixels for their own benefit.

## CLASS ALLEGATIONS

85.     Plaintiff Linda Sayers seeks to represent a class of all Pennsylvania residents who entered information into the "Wondering if Weight Watchers is For You?" Quiz or the checkout pages on weightwatchers.com while in Pennsylvania during the statute of limitations period (the "Pennsylvania Class").

86.     Plaintiff Regina Brookshier seeks to represent a class of all California residents who entered information into the "Wondering if Weight Watchers is For You?" Quiz or the checkout pages on weightwatchers.com while in California during the statute of limitations period (the "California Class") (together with the Pennsylvania Class, the "Classes").

87.     Excluded from the Classes are: (i) Defendant and its officers, directors, employees, principals, affiliated entities, controlling entities, and other affiliates; (ii) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (iii) the Judge(s) assigned to this case and any members of their immediate families.

88.     Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Classes number in the thousands.  The precise number of members of the Classes and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

89.     There is a well-defined community of interest in the common questions of law and fact affecting Class members. Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Common legal and factual questions include, but are not limited to, whether Defendant has violated the CIPA and the WESCA and whether members of the Classes are entitled to actual and/or statutory damages for the aforementioned violations.

90.     The claims of the named Plaintiffs are typical of the claims of the Classes because the Plaintiffs, like all other class members, visited Defendant's website and had their electronic communications intercepted and disclosed to TikTok and Google through the use of the Pixels.

91.     Plaintiffs are adequate representative of the Classes because their interests do not conflict with the interests of the Classes they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

92.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Classes.  Each individual member of the Classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

93.    Finally, Defendant has acted or refused to act on grounds generally applicable to the entire Classes, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Classes as a whole.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF CIPA § 631

94.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

95.    Plaintiff Regina Brookshier brings this claim against Defendant individually and on behalf of the California Class.

96.    CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct."  *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

97.    CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

98.    The Pixels are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

99.    TikTok and Google are each a "separate legal entity that offer[] [a] 'software-as-a-service' and not merely [] passive device[s]." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, each Third Party had the capability to use the wiretapped information for its own purposes. Accordingly, TikTok and Google were each a third party to any communication

between Plaintiff Brooksheir and California Class Members, on the one hand, and Defendant, on the other. *Id*. at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

100.    At all relevant times, by using the Pixels, TikTok and Google willfully and without the consent of all parties to the communication, or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff Brookshier and California Class Members, on the one hand, and Defendant, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

101.    At all relevant times, TikTok and Google used or attempted to use the communications intercepted by their Pixels to improve their products and services, track and advertise to internet users across websites, and generate revenue for themselves and their clients.

102.    At all relevant times, Defendant aided, agreed with, employed, or otherwise enabled the Third Parties to wiretap consumers to the Website using the Pixels and to accomplish the wrongful conduct at issue here.

103.    Plaintiff Brookshier and California Class Members did not provide their prior consent to the Third Parties' intentional access, interception, reading, learning, recording, collection, and usage of Plaintiffs and Class Members' electronic communications.  Nor did Plaintiff Brookshier and Class Members provide their prior consent to Defendant aiding, agreeing with, employing, or otherwise enabling the Third Parties' conduct.

104.    The wiretapping of Plaintiff Brookshier and California Class Members occurred in California, where Plaintiff Brookshier and California Class Members accessed the Website and where the Third Parties—as enabled by Defendant—routed Plaintiffs' and Class Members' electronic communications to each Third Parties' respective servers.

105.    Pursuant to Cal. Penal Code § 637.2, Plaintiff Brookshier and California Class Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

**COUNT II**
**VIOLATION OF CIPA § 632**

106.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

107.    Plaintiff Regina Brookshier brings this claim against Defendant individually and on behalf of the California Class.

108.    CIPA § 632(a) prohibits an entity from:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

109.    The Pixels are "electronic amplifying or recording device[s]."

110.    The following pieces information provided by Plaintiff Brookshier and California Class Members to the Website constitute "confidential communications": age, height, weight, goal weight, whether the user has diabetes, dietary restrictions, and billing information.

111.    At all relevant times, the Third Parties intentionally used the Pixels to eavesdrop upon and record the confidential communications of Plaintiff Brookshier and Class Members, on the one hand, and Weight Watchers, on the other.

112.    When communicating with Weight Watchers, Plaintiff Brookshier and Class Members had an objectively reasonable expectation of privacy. Plaintiff Brookshier and Class Members did not reasonably expect that anyone other than Weight Watchers would be on the other end of the communication, and that other, third-party entities like TikTok and Google, would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the

confidential communications of Plaintiff and Class Members. Indeed, Plaintiff and Class Members each communicated Personally Identifying Information (PII) and Protected Health Information (PHI) to Weight Watchers, as alleged above, which enhanced their reasonable expectation of privacy because such secretive communications should not be disclosed to or intercepted by third parties like TikTok and Google.

113.    Plaintiff Brookshier and Class Members did not consent to any of the Third Parties' actions. Nor have Plaintiff or Class Members consented to the Third Parties' intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Class Members.

114.    Pursuant to Cal. Penal Code § 637.2, Plaintiff Brookshier and California Class Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

## COUNT III
## VIOLATION OF THE WESCA,
### 18 Pa. Cons. Stat. §§ 5701, *et seq.*

115.    Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

116.    Plaintiff Linda Sayers brings claim individually and on behalf of the Pennsylvania Class against Defendant.

117.    The WESCA prohibits (i) the interception or procurement of another to intercept any wire, electronic, or oral communication; (ii) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication; and (iii) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. §§ 5703(1)-(3).

118.    Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (i) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (ii) punitive damages; and (iii) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

119.    At all relevant times, by using the Pixels, TikTok and Google intercepted, used, and disclosed the electronic communications between Plaintiff Sayers and Pennsylvania Class Members on the one hand, and Weight Watchers on the other hand.

120.    At all relevant times, Defendant intentionally procured the interception, use, and disclosure to TikTok and Google of the electronic communications between Plaintiff Sayers and Pennsylvania Class Members on the one hand, and Weight Watchers on the other hand.

121.    Plaintiff Sayers and Pennsylvania Class Members did not provide their prior consent to having their electronic communications intercepted by the Third Parties, nor did they provide their prior consent to having Weight Watchers procure the Third Parties to intercept and use their electronic communications.

122.    Plaintiff Sayers and Pennsylvania Class Members had a justified expectation under the circumstances that their electronic communications would not be intercepted by the Third Parties, given they were communicating sensitive information about their age, height, weight, some medical conditions, and food preferences.  Plaintiff Sayers and Pennsylvania Class Members reasonably believed these communications would only be accessed by Weight Watchers, and not by a third party like TikTok or Google.

123.    Because the use of the Pixel is not disclosed—certainly not before any wiretapping occurred—Plaintiff Sayers and Pennsylvania Class Members were not aware that their electronic communications were being intercepted by the Third Parties.  Further, Defendant cannot avoid

liability "merely by showing that [Plaintiff Sayers and Pennsylvania Class Members] unknowingly communicated directly with [the Third Parties'] servers." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).

124.    The wiretapping of Plaintiff Sayers and Pennsylvania Class Members occurred in Pennsylvania, where Plaintiff Sayers and Pennsylvania Class Members accessed the Website and where the Pixels—as procured by Defendant—routed Plaintiff Sayers' and Pennsylvania Class Members' electronic communications to TikTok's and Google's own servers. *Popa*, 52 F.4th at 131.

125.    Plaintiff Sayers and Class Members seek all relief available under 18 Pa. Cons. Stat. § 5725(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Rule 23, naming Plaintiffs as the representative of the Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For judgment in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded; and

(f)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: January 26, 2024                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By: */s/ Alec M. Leslie*
                                                   Alec M. Leslie

                                           Alec M. Leslie
                                           Max S. Roberts
                                           1330 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile:  (212) 989-9163
                                           Email: aleslie@bursor.com
                                                   mroberts@bursor.com

                                           **BURSOR & FISHER, P.A.**
                                           Joshua R. Wilner*
                                           1990 North California Blvd., Suite 940
                                           Walnut Creek, CA 94596
                                           Telephone:  (925) 300-4455
                                           Facsimile:  (925) 407-2700
                                           Email: jwilner@bursor.com

                                           *Attorneys for Plaintiffs*

                                           *\*Pro Hac Vice Application Forthcoming*